JANET M. HEROLD
Regional Solicitor
SUSAN SELETSKY
Counsel for Wage and Hour
California Bar No. 176106
TARA STEARNS
Trial Attorney
California Bar No. 291130
United States Department of Labor
Office of the Solicitor
90 Seventh Street, Suite 3-700
San Francisco, California 94103
Telephone: (415) 625-7741
Facsimile: (415) 625-7745
Email: stearns.tara.e@dol.gov

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor, <br><br> Plaintiff, <br><br> v. <br><br> SAN MIGUEL HOMES FOR THE ELDERLY, LLC, a California limited liability company; PRECILLA SAN MIGUEL, an individual; TEOFILO CRIS SANQUE, an individual; and RYAN SAN MIGUEL, an individual, <br><br> Defendants. | Case No. 4:15-cv-5556-DMR <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SECRETARY'S SECOND MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |

# TABLE OF CONTENTS

I. INTRODUCTION………………………………………………………..……………....1

II. STATEMENT OF FACTS………………………………...…………….....……….....3

    A.    Defendants' Business and the Secretary's Investigation…………………..……3

    B.    Defendants' Intimidation and Retaliation after the Complaint was Filed …………5

    C.    Ms. San Miguel's Continued Harassment of Employees after the Court's Denial Without Prejudice of the Secretary First Motion for a TRO and OSC……

III. ARGUMENT………………………………………………...…………….....….8

    A.    Jurisdiction……………………………………………………...8

    B.    The Court Should Issue a TRO to Enjoin Defendants from Retaliating Against Employees, Interfering with the Secretary's Investigation, Fabricating False Evidence, and Failing to Keep Accurate Records………………………….....8

        1. The Secretary is Likely to Succeed on the Merits of His Claims……………..….9

            a.  The Secretary is likely to succeed on his retaliation claim…………………..9

            b.  The Secretary is likely to succeed on his interference claim………………12

            c.  The Secretary is likely to succeed on his recordkeeping claim……………13

        2. Absent Immediate Injunctive Relief, the Secretary, Defendants' Employees, and the Public Will Suffer Irreparable Harm………………………………….....14

        3. The Balance of Equities Tilts Sharply in the Secretary's Favor and an Injunction is in the Public Interest……………………………………...………….15

IV. CONCLUSION…………………………………………………………….16

MEMO P&A ISO MOTION FOR TRO AND ORDER TO SHOW CAUSE
Secretary v. San Miguel Homes for the Elderly, LLC et al. (Case No. 4:15-cv-5556-DMR)

i

**<u>TABLE OF AUTHORITIES</u>**

**<u>Cases</u>**

<u>Alliance for the Wild Rockies v. Cottrell</u>,

632 F.3d 1127 (9th Cir. 2011).................................................................8

<u>Arcamuzi v. Continental Air Lines, Inc.</u>,

819 F.2d 935 (9th Cir. 1987)................................................................14

<u>Atchison, T. & S. F. Ry. Co. v. Lennen</u>,

640 F.2d 255 (10th Cir. 1981)................................................................9

<u>Barrentine v. Arkansas-Best Freight Sys.</u>,

450 U.S. 728 (1981) ................................................................10

<u>Burlington N. & Santa Fe Ry. Co. v. White</u>,

548 U.S. 53 (2006)……………………………………………………….9

<u>Conner v. Schnuck Markets, Inc.</u>,

121 F.3d 1390 (10th Cir. 1997)................................................................9

<u>Ford v. Alfaro</u>,

785 F.2d 835 (9th Cir. 1986)................................................................11

<u>Harris v. Acme Universal, Inc.</u>,

2014 WL 3907107 (D. Guam Aug. 11, 2014) ................................................................12

<u>Harris v. Oak Grove Cinemas, Inc.</u>,

2013 WL 3456563 (D. Or. May 2, 2013)................................................................12

<u>In re Majewski</u>,

310 F.3d 653 (9th Cir. 2002)................................................................9

Kasten v. Saint-Gobain Performance Plastics Corp.,

  563 U.S. 1 (2011) ...................................................................................9, 13, 15

Lambert v. Ackerley,

  180 F.3d 997 (9th Cir. 1999)......................................................................10

Marxe v. Jackson,

  833 F.2d 1121 (3d Cir. 1987)......................................................................8

Mitchell v. Robert DeMario Jewelry, Inc.,

  361 U.S. 288 (1960) ...................................................................................12

Mullins v. City of New York,

  626 F.3d 47 (2d Cir. 2010).......................................................................9, 15

Nen Thio v. Genji, LLC,

  14 F. Supp. 3d 1324 (N.D. Cal. 2014) ......................................................10

Perez v. Fatima/Zahra, Inc.,

  2014 WL 2154092 (N.D. Cal. May 22, 2014) ..........................................13

Ray v. Henderson,

  217 F. 3d 1234 (9th Cir. 2000)....................................................................9

Sierra On-Line, Inc. v. Phoenix Software, Inc.,

  739 F.2d 1415 (9th Cir. 1984).....................................................................8

Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co.,

  240 F.3d 832 (9th Cir. 2001).......................................................................8

Trailer Train Co. v. State Bd. of Equalization,

  697 F.2d 860 (9th Cir. 1983).......................................................................8

United States v. Oregon State Med. Soc.,

343 U.S. 326 (1952) .................................................................................................10

Winter v. Natural Res. Def. Council, Inc.,

555 U.S. 7 (2008) ...................................................................................................8

## **Statutes**

28 U.S.C. § 1345 ...................................................................................................8

29 U.S.C. § 202(a) .................................................................................................2

29 U.S.C. §§ 206, 207 ...........................................................................................2

29 U.S.C. § 211(a) .............................................................................................5, 12

29 U.S.C. § 211(c) ................................................................................................13

29 U.S.C. § 215(a)(3) ....................................................................................5, 9, 11

29 U.S.C. § 217 ..................................................................................................8, 9

## **Rules**

Federal Rule of Civil Procedure 65 ......................................................................8

## **Regulations**

29 C.F.R. § 516.2 (7) ...........................................................................................14

29 C.F.R. § 785.7 .................................................................................................14

## I. INTRODUCTION

The Secretary of Labor, for the second time, seeks a temporary restraining order and order to show cause why a preliminary injunction should not issue enjoining Defendants San Miguel Homes for the Elderly, LLC, Precilla San Miguel, Teofilo Cris Sanque, and Ryan San Miguel from unlawfully intimidating, threatening, or retaliating against employees for participating in the Secretary's investigation and enforcement action under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 et seq., and from fabricating evidence and failing to keep accurate records of employees' hours worked.

On December 4, 2015, the Secretary filed a Complaint alleging that Defendants, who operate residential care facilities for the elderly, violated the minimum wage, overtime, and recordkeeping provisions of the FLSA. The affected workers are caregivers who were required to stay in the facilities for 24-hour shifts, 2-5 days in a row per week, monitoring and caring for the elderly residents. Defendants' own employment manual states that caregivers are "expect[ed] . . . to be available 24 hours per day, 7 days a week" for the residents.  Defendants, however, paid them for only 8 hours of work per day, or a flat daily rate that did not provide the minimum wage for all hours worked. Further, before 2014, Defendants kept no records of employees' daily hours worked, and afterward, the timesheets they kept showed just 8 hours of work per day. During the Secretary's investigation, Defendants knew that the Secretary's investigator interviewed employees.

In January 2016, confidential informants notified the Secretary's investigator that since December 2016, Precilla San Miguel has pressured employees to sign false, backdated timesheets, and newly created employment agreements stating that they are not entitled to overtime. Since then, Ms. San Miguel has also forced employees to sign illegal agreements not to sue their employer. In addition, Ms. San Miguel has singled out caregivers whom she believes gave information to the Department of Labor,

trying to find mistakes in their work, and treating them worse than other workers. In late January, Ms. San Miguel installed video surveillance cameras in the facilities and told employees named in the Complaint that she would sue all the employees allegedly entitled to back pay after she won this lawsuit. At least one employee has been constructively discharged due to Ms. San Miguel's conduct. In addition, the key witnesses in this case—the employees who can speak directly to the wage and hour violations alleged by the Secretary—are afraid to talk to the Secretary's representatives or participate in this litigation.

On February 9, 2016, the Court denied the Secretary's first motion for a TRO and order to show cause without prejudice because the operative complaint did not allege retaliation or interference. Shortly thereafter, Ms. San Miguel left the country for several weeks. In the last week, the Secretary learned from a confidential informant that Ms. San Miguel returned in early March and resumed her harassment and questioning of employees about communications with the Department of Labor.

This request is urgent. Ms. San Miguel is hindering witnesses' participation in this case and deterring employees from advocating for their rights under the FLSA. If the Court does not enjoin Defendants from continuing to intimidate and retaliate against employees, fabricate false evidence, and flout the recordkeeping requirements of the FLSA, the Secretary's investigation and enforcement action will be irreparably harmed. Further, employees will be irreparably harmed if fear of reprisal forces them to accept substandard working conditions. An injunction is necessary both to protect these workers and the public interest in enforcing the FLSA, which provides minimum wage and overtime protections and prevents law-abiding businesses from being undercut by competitors with substandard wages. See 29 U.S.C. §§ 202(a), 206, 207. To promote those interests, the Secretary's investigations and enforcement actions must be free from witness intimidation, retaliation, and fabrication of evidence.

Finally, the balance of interests in this case tips sharply in the Secretary's favor. Defendants have no legitimate interest in intimidating, harassing, or retaliating against their current and former employees for engaging in protected activity, or in fabricating false evidence or keeping inaccurate records. The Secretary, on the other hand, seeks only to require Defendants to comply with the law. To comply with a TRO, Defendants will bear the minimal burden of ceasing their violations of the FLSA.

## II. STATEMENT OF FACTS

### A. Defendants' Business and the Secretary's Investigation

Defendants San Miguel Homes for the Elderly, LLC, and its owners, Precilla San Miguel, Teofilo Cris Sanque, and Ryan San Miguel operate a for-profit business consisting of three residential care facilities for the elderly and an in-home elder care service. Declaration of Mary Pham In Support of Secretary's Motion for TRO and Order to Show Cause ("Pham Decl.") ¶ 4. Each facility is single-family home in Union City, California with approximately 5-6 residents. Id. Defendants employ approximately 2-3 caregivers in each facility who monitor the residents and assist them with bathing, eating, and taking medications. Id.

In March 2015, the Department of Labor opened an investigation into Defendants' pay practices at the three facilities. Id. ¶ 3. On March 10, 2015, the Secretary's investigator met with Ms. San Miguel and informed her that the Secretary's investigators would be interviewing employees. Id. ¶ 5. That day, the Secretary's investigators interviewed 6 employees at the three facilities. Id.

Early in the investigation, the Secretary's investigator requested all records of the daily hours worked by employees in the facilities from Defendants. Id. ¶ 6. Ms. San Miguel subsequently produced timesheets that started in 2014. Id., Ex. A. In response, the Secretary's investigator asked for time records from earlier than 2014. Id. ¶ 6. On March 16, 2015, Ms. San Miguel told the Secretary's

investigator that she could not produce the records because she had only begun keeping timesheets in the facilities in the last year. Id. ¶ 7.

Based on interviews with witnesses and information provided by Defendants, the Secretary's investigator determined that Defendants required two caregivers per facility to stay in the facility 5 days in a row per week, and others to stay 2-4 days as relievers. Id. ¶ 9. Throughout the day, the employees cared for the residents, among other things, by bathing and dressing them, and helping them eat. Id. In the evenings and at night, they continued to monitor and attend to the residents, for example, by helping them use the bathroom or watching residents to ensure they did not wander. Id. At night, they slept in shared rooms, and their sleep was often interrupted to attend to the residents. Id. Defendants' own employment manual states that caregivers are "expect[ed] . . . to be available 24 hours per day, 7 days a week" for the elderly residents. Pham Decl., Ex. B at p. 14. Defendants, however, paid their workers for only 8 hours of work per day, or a flat daily rate that did provide the minimum wage for all hours worked. Pham Decl. ¶ 9. Further, for some time periods, Defendants failed to maintain any records at all of the daily hours worked by employees in the facilities, and for others, the timesheets they maintained showed only 8 hours of work per day. Id.

In late April 2015, the Secretary's investigator requested a meeting with Defendants' attorney to discuss her investigative findings. Id. ¶ 10. In response, the attorney claimed that the caregivers were not entitled to minimum wage and overtime under the FLSA, and demanded that the investigation be dropped. Id. Over the next few months, the Wage and Hour Division attempted to administratively resolve the investigation, but these efforts failed because the attorney continued to dispute coverage. Id. ¶ 11.

On November 12, 2016, the Secretary's investigator met with Ms. San Miguel, Mr. Sanque, Mr. San Miguel, and their attorney and reviewed her investigative findings. Id. ¶ 12. During the meeting,

the investigator explained that she had found that Defendants failed to pay caregivers the minimum wage and overtime wages required by the FLSA, and failed to comply with the recordkeeping provisions of the Act. Id. With regard to recordkeeping, the investigator explained that Defendants violated the FLSA by failing to keep any records of the daily hours worked by employees in the facilities for many pay periods, and failing to keep records that were accurate and complete for others. Id.

After the meeting, Defendants continued to deny that the FLSA covered their employees. Id. ¶ 13. As result, on December 4, 2015, the Secretary filed a Complaint for Violations of the Fair Labor Standards Act. Compl., Dkt. 1. The Complaint named 22 current and former employees affected by the violations. Id., Ex. A. On February 8, 2016, the Secretary filed a Motion for Leave to File an Amended Complaint making the same allegations as in the original Complaint, but adding additional factual allegations and two new causes of action for violations of FLSA §§ 11(a) and 15(a)(3), 29 U.S.C. §§ 211(a), 215(a)(3). See Dkt. 14.

**B. Defendants' Intimidation and Retaliation after the Complaint was Filed**

On January 20, 2016, a confidential informant notified the Secretary's investigator that Ms. San Miguel was pressuring employees to sign false, backdated timesheets for use in this case. Pham Decl. ¶ 14. According to the informant, in December 2015, Ms. San Miguel approached current and former employees of the facilities and pressured them to sign fake timesheets backdated for pay periods in 2013 or earlier, offering some money in exchange for doing so. Id. ¶¶ 14-15. In addition, Ms. San Miguel required the employees to sign newly created employment agreements stating that they were not entitled to overtime. Id.

Several days later, the Secretary's investigator learned from another confidential informant that in December 2015 or January 2016, Ms. San Miguel required employees interviewed by the Secretary's

investigators to sign an agreement that purported to waive their right to sue their employer. Id. ¶ 16.

The waiver states:

> TALK AND AGREE CONTRACT BEFORE OPENING LEGAL ACTION
>
> For a compensation of ____$[redacted]___ I waved[sic] the right to open a legal case or sue San Miguel Homes LLC.
>
> I will talk to the management first about my concerns and try to Settle the problem.
>
> San Miguel Homes LLC talked to me about asking an Attorney if I have legal doubts.

Id. ¶ 16.

In addition, in late January 2016, confidential informants informed the Secretary's investigator that since December of last year, Ms. San Miguel has repeatedly expressed her anger at employees whom she accused of providing information to the Department of Labor. Id. ¶¶ 14, 17. She has questioned the employees about the information they provided and tried to pinpoint who complained about their working conditions. Id. ¶¶ 14, 17. She has picked on employees she accused of complaining, trying to find mistakes in their work and treating them worse than other employees. Id. ¶ 17. And in late January 2016, she installed video surveillance cameras in the facilities and told employees named in the Secretary's Complaint that she would sue all the employees allegedly entitled to back pay after she won the lawsuit brought by the Department of Labor. Id.; Second Declaration of Mary Pham in Support of Motion for TRO and OSC ("Second Pham Decl."), at ¶ 3.

### C. Ms. San Miguel's Continued Harassment of Employees after the Court's Denial Without Prejudice of the Secretary First Motion for a TRO and OSC

Based on the evidence provided by confidential informants, on February 8, 2016 the Secretary filed a motion for a TRO and an order to show cause why a preliminary injunction should not issue enjoining Defendants from retaliating against workers, and interfering with the Secretary's investigation, and violating the record-keeping provisions of the FLSA. Dkt. 15. On

February 9, 2016, the Court denied the Secretary's motion without prejudice because the operative complaint did not allege retaliation or interference with the Secretary's investigation. Dkt. 16.

On February 11, 2016, the Secretary's investigator learned from a confidential informant that Ms. San Miguel had left the country for several weeks. Second Pham Decl. ¶ 4. On March 2, 2016, the Secretary's investigator learned from a confidential informant that Ms. San Miguel had returned. Id. ¶ 5. Two days later, the Secretary's investigator spoke with a confidential informant who reported that, after her return, Ms. San Miguel had questioned an employee about whether the employee had communicated with the Secretary's investigator and said anything negative about Ms. San Miguel. Id. ¶ 6.

Ms. San Miguel's retaliatory actions—questioning employees whom she believes gave information to the Department of Labor, threatening to sue employees named in the Complaint, and forcing employees who participated in the investigation to sign false documents and illegal waivers— has intimidated current and former caregiver employees and made them afraid to freely participate in this litigation. Pham Decl. ¶ 19; Second Pham Decl. ¶ 7. In addition, her conduct forced at least one employee to resign rather than face further harassment, retaliation, and pressure to sign false documents. Pham Decl. ¶¶ 14, 17. Some of these employees are still employed in Defendants facilities, where they work in close quarters with Ms. San Miguel and her sons. Id. ¶ 18. The employees are afraid that if they participate in this litigation or openly speak to the Secretary's representatives, they will face further reprisal from Ms. San Miguel. Id. ¶ 19; Second Pham Decl. ¶ 7. In addition, employees are afraid of suffering negative consequences for signing the false documents. Id. ¶ 14.

## II. ARGUMENT

### A. Jurisdiction

The Court has jurisdiction over this action under FLSA § 17, 29 U.S.C. § 217 (injunction proceedings), and 28 U.S.C. § 1345 (proceeding brought by the United States).

### B. The Court Should Issue a TRO to Enjoin Defendants from Retaliating Against Employees, Interfering with the Secretary's Investigation, Fabricating False Evidence, and Failing to Keep Accurate Records.

A temporary restraining order is urgently required to enjoin Defendants from continuing to violate the antiretaliation, investigative, and recordkeeping provisions of the FLSA. To obtain either a TRO or a preliminary injunction under Federal Rule of Civil Procedure 65, the moving party must establish (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm without preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (discussing standard for preliminary injunction); Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001) (standards for TRO and preliminary injunction are substantially identical).[1]

Where the injunction is sought to enjoin a violation of a federal statute that specifically provides for injunctive relief, a showing of irreparable harm is not necessary. See Trailer Train Co. v. State Bd. of Equalization, 697 F.2d 860, 869 (9th Cir. 1983); Marxe v. Jackson, 833 F.2d 1121, 1128 n.3 (3d Cir. 1987). Because the FLSA expressly provides for injunctive relief to restrain violations of the anti-retaliation and recordkeeping provisions of the Act, see 29 U.S.C. § 217, the Secretary need only show that Defendants are engaged in or are about to engage in conduct prohibited by the statute. See

---

[1] Alternatively, an injunction may issue if there are "serious questions going to the merits" and the hardship balance tips sharply toward the movant, as long as the other two elements of the Winter test are met. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th Cir. 2011). A "serious question" exists if the movant "has a fair chance of success on the merits." Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir. 1984).

Atchison, T. & S. F. Ry. Co. v. Lennen, 640 F.2d 255, 259 (10th Cir. 1981). Nonetheless, the Secretary has taken the additional step of showing that the injunction is necessary to prevent irreparable harm.

### 1. The Secretary is Likely to Succeed on the Merits of His Claims.

#### a. The Secretary is likely to succeed on his retaliation claim.

The Secretary is likely to prevail on his claim that Defendants violated and are violating the FLSA's antiretaliation provision. The FLSA makes it unlawful for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA], or has testified or is about to testify in any such proceeding." 29 U.S.C. § 215(a)(3). Congress enacted this provision to protect the Act's enforcement scheme—which relies "not upon continuing detailed federal supervision or inspection of payrolls, but upon information and complaints received from employees"—by ensuring that fear of reprisal does not induce workers "quietly to accept substandard conditions." Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 11-12 (2011) (internal quotation marks and citations omitted). "Unchecked retaliation subverts the purpose of the FLSA . . ." Mullins v. City of New York, 626 F.3d 47, 55 (2d Cir. 2010). Accordingly, this provision "should be interpreted broadly, to give effect to the statute's remedial purpose." In re Majewski, 310 F.3d 653, 655 (9th Cir. 2002).

To establish a prima facie case of retaliation, the Secretary may show that an individual or group of individuals (1) engaged in activity protected by the FLSA; (2) suffered adverse action by the employer; and (3) a causal connection exists between the adverse action and the employee's protected activity. Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1394 (10th Cir. 1997). An adverse action includes any action "reasonably likely to deter employees from engaging in protected activity." Ray v. Henderson, 217 F. 3d 1234, 1237 (9th Cir. 2000) (emphasis added); see also Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67-68 (2006). Threats of future retaliation are as much a basis for

injunctive relief as past retaliatory acts.  See United States v. Oregon State Med. Soc., 343 U.S. 326, 333 (1952) ("All it takes to make the cause of action for relief by injunction is a real threat of future violation or a contemporary violation of a nature likely to occur.").

By reporting information about Defendants' employment practices to the Secretary's investigators, Defendants' caregiver employees engaged in FLSA-protected activity. See, eg., Lambert v. Ackerley, 180 F.3d 997, 1004-05 (9th Cir. 1999).  In response, Ms. San Miguel began a campaign of threats, intimidation, and pressure to sign false documents to retaliate against employees for providing information to the Department of Labor and impede them from participating as witnesses in this case. Pham Decl. ¶¶ 14-17.   Both the nature and timing of Ms. San Miguel's actions demonstrate a retaliatory motive.

First, in November or December 2015, shortly after the parties met to discuss the Secretary's investigative findings, Ms. San Miguel began pressuring and/or bribing employees to sign false, backdated timesheets, and newly created employment agreements stating that the employees are not entitled to overtime.  Id. ¶ 14.

Second, in December 2015 and January 2016, after the Complaint was filed, Ms. San Miguel required employees who were interviewed in the investigation to sign waivers of their right to sue their employer.  Id. ¶ 16.  These waivers are illegal because an employee's FLSA claims are nonwaivable, and "may not be settled without supervision of either the Secretary of Labor or a district court." Nen Thio v. Genji, LLC, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014); see also Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728, 740 (1981) ("FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate.") (internal quotation marks and citations omitted).  In addition, the agreements undermine the FLSA's antiretaliation protections by inhibiting employees from engaging in future

protected activity. See 29 U.S.C § 215(a)(3) (protecting employees' right to initiate a "proceeding" under the FLSA).

Third, after the Complaint was filed, Ms. San Miguel repeatedly expressed her anger at the employees whom she believes gave information to the Secretary's investigators, criticizing their work more than other employees, and questioning them about the information they allegedly provided. Pham Decl. ¶ 14, 17.   Indeed, in late January 2016, Ms. San Miguel told employees named in the Secretary's Complaint that she would sue them—and all the other employees identified by the Secretary as being entitled to back pay—after she won this lawsuit.  Id. ¶ 17.

Finally, in late January 2016, Defendants installed video surveillance cameras in the facilities, sending a clear message to employees, some of whom work 24-hours shifts multiple days a week, that they are being watched. Second Pham Decl. ¶ 3. In addition, just weeks after the Secretary filed his first motion for a TRO and order to show cause to enjoin the intimidation and retaliation, Ms. San Miguel harassed and questioned an employee about their communications with the Department of Labor, in an apparent effort to deter them from engaging in protected activity. Id. at ¶ 6.

Ms. San Miguel's harassment, threats, and pressure to sign false documents and illegal waivers has already forced at least one employee to resign. Pham Decl. ¶ 17. This amounts to an unlawful constructive discharge. See Ford v. Alfaro, 785 F.2d 835, 841 (9th Cir. 1986) (employer constructively discharged employee in violation of the FLSA when employer threatened to "get even" with employee for causing Department of Labor's investigation and told her that he did not want her to work for him anymore).

Further, Ms. San Miguel's retaliatory actions have chilled employees from participating as witnesses in this litigation and advocating for their rights under the FLSA. Pham Decl. ¶ 19; Second Pham Decl. ¶ 7.  Employees are afraid of speaking to the Secretary's representatives about their

working conditions or testifying in this proceeding.  Pham Decl. ¶ 19; Second Pham Decl.  ¶ 7.  This is precisely the type of retaliation that the FLSA condemns.  See Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 292 (1960) (purpose of antiretaliation provision is to ensure that "employees felt free to approach officials with their grievances").

District courts have granted motions to enjoin similar retaliatory conduct by employers. For example, in Harris v. Acme Universal, Inc., No. CV 12-00008, 2014 WL 3907107, at *2 (D. Guam Aug. 11, 2014) (unreported), the district court enjoined an employer who urged former employees to withdraw their FLSA complaints, offered them money, threatened their families, and coerced them into signing false statements about their working conditions.  Likewise, in Harris v. Oak Grove Cinemas, Inc., No. 3:13–cv–00728–HU, 2013 WL 3456563, at *1 (D. Or. May 2, 2013) (unreported), the court enjoined an employer who threatened termination and bodily harm against employees who cooperated with Secretary's FLSA investigation. As in those cases, here, the Secretary is likely to succeed on the merits of his retaliation claim.

### b.  The Secretary is likely to succeed on his interference claim.

The Secretary is likely to prevail in showing that Defendants violated the FLSA by interfering with the Secretary's ongoing investigation of Defendants' pay practices.  The FLSA empowers the Secretary to "investigate and gather data regarding the wages, hours, and other conditions and practices of . . . employment," to "enter and inspect" workplaces, to inspect "records," and to "question . . . employees."  29 U.S.C. § 211(a).  In addition, the Secretary may "investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of [the FLSA], or which may aid in the enforcement of [the FLSA]."  Id.  The FLSA grants the Secretary these investigative powers because the statute relies for enforcement "not upon continuing detailed federal supervision or inspection of payrolls, but upon information and

complaints received from employees." <u>Kasten</u>, 563 U.S. at 11 (internal quotation marks and citations omitted).

Ms. San Miguel has interfered with the Secretary's ongoing investigation of Defendants' pay practices by threatening to sue employees named in the Secretary's Complaint, requiring employees who participated in the investigation to sign false timesheets, employment agreements, and waivers of their right to sue their employer, and questioning, criticizing, and expressing anger at employees whom she believes provided information to the Secretary's investigators. Pham Decl. ¶¶ 14-17; Second Pham Decl. ¶ 7. Due to her actions, employees are afraid of speaking to the Secretary's representatives about their employment conditions or testifying in this proceeding, especially since Ms. San Miguel coerced them into signing false representations about their employment conditions. Pham Decl. ¶¶ 14, 19; Second Pham Decl. ¶ 7.

District courts have granted TROs and preliminary injunctions to enjoin similar interference with the Secretary's investigations by employers. For example, in <u>Perez v. Fatima/Zahra, Inc.</u>, No. C 14-2337 CW, 2014 WL 2154092, at *1 (N.D. Cal. May 22, 2014) (unreported), the court enjoined an employer who threatened to fire employees if they cooperated with the Secretary's investigation and instructed employees not to speak to the Secretary's investigator. As in that case, here, the Secretary is likely to succeed on the claim that Defendants are interfering with the Secretary's investigation in violation of the FLSA.

### c. The Secretary is likely to succeed on his recordkeeping claim.

The Secretary is likely to succeed on his claim that Defendants violated the FLSA's recordkeeping provisions by fabricating and failing to maintain accurate records of the hours worked by their employees. The FLSA requires employers to "make, keep, and preserve" records of the "persons employed by him and of the wages [and] hours." 29 U.S.C. § 211(c). Among other things, employers

must keep records of "[h]ours worked each workday and total hours worked each workweek." 29 C.F.R. § 516.2 (7).

During the investigation, Ms. San Miguel admitted that no records of the daily hours worked by caregivers in the residential care facilities were kept before 2014. Pham Decl. ¶¶ 7, 9. In addition, the timesheets that Defendants began to keep in 2014 failed to accurately record all hours worked. Id. ¶ 9, Ex. A. Under the FLSA, hours worked include "all the time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place." 29 C.F.R. § 785.7. Defendants required caregivers in the residential care facilities to stay in the facilities 2 to 5 days in a row per week, and they were required to continuously care for and supervise the residents throughout the day and night. Pham Decl. ¶ 9. Indeed, Defendants' own employment manual states that employees must be "available 24 hours per day, 7 days a week" for the elderly residents. Pham Decl. ¶ 9, Ex. B at p. 14. The timesheets kept by Defendants, however, showed only 8 hours of work per day. Id., Ex. A. Based on this evidence, the Secretary is likely to succeed in proving that Defendants violated the recordkeeping requirements of the FLSA by failing to keep the records required by the FLSA, including accurate and complete records of the hours worked by employees.

### 2. Absent Immediate Injunctive Relief, the Secretary, Defendants' Employees, and the Public Will Suffer Irreparable Harm

Urgent action by the Court is necessary to prevent irreparable harm. If the Court does not stop Defendants from threatening, intimidating, and retaliating against employees who participated or may participate in the Secretary's investigation, and pressuring them to sign false time records, those employees—and other potential complainants—will be deterred from coming forward to challenge their employer's illegal conduct. Defendants have already succeeded in scaring most, if not all, of their employees into silence. This chilling effect on FLSA-protected activity is irreparable harm. See Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 938 (9th Cir. 1987) ("[A]llegations of

retaliation for the exercise of statutorily protected rights represent possible irreparable harm far beyond economic loss.").

Further, if the Court does not enjoin Defendants from tampering with witnesses, fabricating false evidence for use in this case, and failing to keep accurate records of employees' hours worked, the Secretary's ability to enforce the FLSA and the integrity of the judicial process will be harmed.  The "resulting weakened enforcement" of the FLSA directly interferes with and irreparably harms the Secretary's enforcement powers, and in turn, the public interest. Mullins, 626 F.3d at 55.

The employees, too, will be irreparably harmed if fear of retaliation and negative consequences for signing false documents induces them "quietly to accept substandard conditions."  Kasten, 563 U.S. at 1 (internal quotation marks and citation omitted). Finally, the public at large—particularly Defendants' law-abiding competitors—will be irreparably harmed if Defendants' unfair and unlawful employment practices are allowed to continue.

### 3. The Balance of Equities Tilts Sharply in the Secretary's Favor and an Injunction is in the Public Interest.

The balance of equities tilts sharply in the Secretary's favor, and entering the TRO and preliminary injunction is in the public interest.  Defendants have no legitimate interest in intimidating, harassing, or retaliating against employees for engaging in FLSA-protected conduct, fabricating false time records for use in this case, or continuing to violate the recordkeeping requirements of the FLSA. The Secretary, on the other hand, seeks only an order requiring Defendants to comply with the law. Enjoining Defendants from continuing to violate the recordkeeping provisions of the FLSA will assist this litigation to establish if Defendants have come into compliance with the FLSA and potentially even empower workers with the recognition that Defendants are complying with the FLSA. Further,

restraining Defendants' unlawful conduct will ensure that they comply with the FLSA's anti-retaliation and investigative provisions and advance the public interest in effective enforcement of the FLSA.

## IV. CONCLUSION

For the foregoing reasons, the Secretary requests that the Court enter a Temporary Restraining Order giving full and fair notice to employees that this Court will not allow Defendants to intimidate and retaliate against their employees for engaging in conduct protected by the FLSA, or to continue fabricating evidence or keeping inaccurate records. The Secretary asks the Court to grant his motion for a TRO and enter a preliminary injunction as follows:

1. Enjoining Defendants from terminating or threatening to terminate any employees, or retaliating or discriminating against any employees in any way based on Defendants' belief that the employee spoke with or will speak with officials of the U.S. Department of Labor, or engaged in or will engage in any other FLSA-protected activity;

2. Enjoining Defendants from speaking directly to or questioning any of their current or former employees about any pending investigation by the Department of Labor or any communication any employee has had or will have with the Department of Labor about the pending investigation, litigation arising from the investigation, or any future investigation;

3. Within 2 days of this Order, requiring Defendants to permit the Secretary of Labor's representatives to enter each residential care facility operated by Defendants, and in the presence of Precilla San Miguel, Cris Sanque, and Ryan San Miguel, to read aloud the following statement to all employees employed by Defendants:

> You are protected by the Fair Labor Standards Act. You have the right to speak freely to officials of the U.S. Department of Labor and participate in the lawsuit brought by the Department against your employer. Your employer cannot retaliate against you in any way for speaking to the Department of Labor or participating in the lawsuit.

The U.S. District Court for the Northern District of California has ordered San Miguel Homes for the Elderly, LLC, Precilla San Miguel, Teofilo Cris Sanque, and Ryan San Miguel, and anyone acting on their behalf, to immediately stop retaliating against or in any way threatening you for talking to the Department of Labor or participating in the Department's investigation of and lawsuit against your employer.

The Court also ordered your employer to stop asking you to sign false timesheets, employment agreements, and waivers. You will not suffer any negative consequences for signing those documents.

You have the right to sue your employer to enforce your rights under the Fair Labor Standards Act. Any waiver of those rights that your employer asked you to sign is illegal and cannot be used against you.

Your employer is required by the Fair Labor Standards Act to pay you at least $7.25 per hour for all hours that you work, and 1 and ½ times your regular hourly rate for any hours above 40 that you work in a week. <u>All the hours that you are required to stay at the residential facility count as hours worked.</u> If you are required to stay for less than 24 hours, you must be paid for all the time that you spend sleeping. If you are required to stay for 24 hours or more, you must be paid for all the time you spend sleeping if you cannot get at least 5 hours of sleep during the night due to being awakened to care for the residents. If you get at least 5 hours of sleep, your employer may deduct your sleep time from hours worked, but you must be paid for all the time that you spend caring for residents at night.

4.     Requiring Defendants to pay their employees for the time spent in the meeting with the U.S. Department of Labor required by paragraph 3.

5.     Requiring Defendants Precilla San Miguel, Teofilo Cris Sanque, and Ryan San Miguel to sign a copy of the statement included in paragraph 3, post a copy of the signed statement at each of their residential care facilities, and mail a copy of the signed statement to all current and former employees who have worked for Defendants since October 2012.

6.     Enjoining Defendants from fabricating false evidence or pressuring employees to sign false documents related to their employment or waivers of their right to sue their employer;

7.     Requiring Defendants to produce to the Secretary all fake timesheets, waiver agreements, and other employment agreements that Defendants have required current and former employees to sign

since November 1, 2015, and enjoining them from introducing any of those documents as evidence of their compliance with the FLSA in this case;

8.      Enjoining Defendants from taking any legal action against their current and former employees for participating in the U.S. Department of Labor's investigation or lawsuit;

9.      Prior to terminating any employee, requiring Defendants to give written notice to the employee and to the Wage and Hour Division of the U.S. Department of Labor at least seven days before the termination;

10.     Enjoining Defendants from continuing to violate the FLSA's recordkeeping requirements, including the requirement to maintain an accurate record of all hours worked by their employees;

11.     Requiring Defendants to reimburse the Secretary for the costs of bringing this motion; and

12.     Ordering other relief as the Court may deem appropriate.

Respectfully submitted,

Date: March 8, 2016                      PATRICIA SMITH
                                         Solicitor of Labor

                                         JANET M. HEROLD
                                         Regional Solicitor

                                         SUSAN SELETSKY
                                         Counsel for Wage and Hour

                                         By ____/s/ Tara Stearns
                                         TARA STEARNS
                                         Trial Attorney

                                         Attorneys for Plaintiff