JANET M. HEROLD
Regional Solicitor
SUSAN SELETSKY
Counsel for Wage and Hour
California Bar No. 176106
TARA STEARNS
Trial Attorney
California Bar No. 291130
United States Department of Labor
Office of the Solicitor
90 Seventh Street, Suite 3-700
San Francisco, California 94103
Telephone: (415) 625-7741
Facsimile: (415) 625-7745
Email: stearns.tara.e@dol.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br>v.<br><br>SAN MIGUEL HOMES FOR THE ELDERLY, LLC, a California limited liability company; PRECILLA SAN MIGUEL, an individual; TEOFILO CRIS SANQUE, an individual; and RYAN SAN MIGUEL, an individual,<br><br>Defendants. | Case No. 4:15-cv-5556-DMR<br><br>**DECLARATION OF MARY PHAM IN SUPPORT OF SECRETARY'S MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |

I, MARY PHAM, declare as follows:

1. I submit this declaration in support of the Secretary's MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY

PHAM DECLARATION IN SUPPORT OF MOTION FOR TRO & AND ORDER TO SHOW CAUSE
*Secretary v. San Miguel Homes for the Elderly, LLC* (Case No. 4:15-cv-5556-DMR)

1

INJUNCTION SHOULD NOT ISSUE. I make this declaration freely and under penalty of perjury, and if called as a witness I would testify about the facts in this declaration.

2. I am an Investigator for the United States Department of Labor, Wage and Hour Division ("Wage and Hour"), in San Jose, California. As part of my official duties, I conduct investigations to determine whether employers are complying with the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, *et seq.*) (FLSA).

3. On March 6, 2015, I was assigned to investigate Defendants San Miguel Homes for the Elderly, LLC, Precilla San Miguel, Teofilo Cris Sanque, and Ryan San Miguel. My colleague, Investigator Ke "Lucy" Liang, was also assigned to the investigation.

4. Defendants own and operate a for-profit business consisting of three residential care facilities for the elderly and an in-home elder care service. Each facility is a single-family home in Union City, California that houses approximately 5-6 elderly residents. In each facility, Defendants employ approximately 2-3 caregivers who monitor the residents and assist them with bathing, dressing, eating, and taking medications. The caregivers employed in the facilities are supervised and managed by Ms. San Miguel, Mr. Sanque, and Mr. San Miguel.

5. On March 10, 2015, I met with Ms. San Miguel at one of the facilities. During our meeting, I explained that we would be interviewing workers employed in facilities as part of our investigation. That day, Liang and I interviewed a total of six workers employed as caregivers at the three facilities.

6. During our first meeting on March 10, 2015, I requested that Ms. San Miguel produce all daily and weekly records kept of the hours worked by caregivers in the facilities. Ms. San Miguel subsequently produced timesheets for the workers that started in 2014. In follow-up conversations, I asked Ms. San Miguel for time records from earlier than 2014.

PHAM DECLARATION IN SUPPORT OF MOTION FOR TRO & AND ORDER TO SHOW CAUSE
*Secretary v. San Miguel Homes for the Elderly, LLC* (Case No. 4:15-cv-5556-DMR)

2

7. On March 16, 2015, during a meeting at one of the facilities, Ms. San Miguel told me that she could not produce any records of the daily hours worked by the caregivers before 2014 because she only began keeping timesheets in the facilities in the last year.

8. Early in my investigation, Defendants provided a copy of their employment manual to me. A true and correct copy of the manual is attached as **Exhibit B** to this Declaration.

9. In March and April 2015, I continued to gather records and conduct additional witness interviews. Based on my investigation, I determined that Defendants had failed to pay caregivers in the facilities the minimum wage and overtime wages required by the FLSA, and to maintain accurate and complete records of their hours worked. Specifically, I determined that Defendants required two caregivers per facility stay in the facility 5 days in a row per week, and others to stay 2-4 days per week as relievers. During the day, employees cared for the residents, among other things, by bathing, dressing, and feeding them. In the evening and at night, employees monitored and attended to the residents, for example, by helping them use the bathroom or watching residents who might wander. They slept in shared rooms, and were often awakened to attend to residents. Defendants' own employment manual states that caregivers are "expect[ed] . . . to be available 24 hours per day, 7 days a week" for the elderly residents. Defendants, however, paid their workers for only 8 hours of work per day, or a flat daily rate that did not provide at least the minimum wage for all hours that caregivers were required to be at the facilities. In addition, before 2014, Defendants maintained no records at all of the daily hours worked by the caregivers, and the timesheets they maintained afterward showed only 8 hours of work per day.

10. In late April 2015, I contacted Jocelyn Burton, Defendants' attorney, to request a meeting to discuss my investigative findings. In response, Ms. Burton claimed that Defendants' employees were not covered by the FLSA and demanded that the case be dropped.

PHAM DECLARATION IN SUPPORT OF MOTION FOR TRO & AND ORDER TO SHOW CAUSE
*Secretary v. San Miguel Homes for the Elderly, LLC* (Case No. 4:15-cv-5556-DMR)

3

11. Over the next few months, Wage and Hour Assistant Area Director Michael Eastwood, and I continued to try to administratively resolve the investigation. We were unable to do so, however, because Ms. Burton continued to dispute that the FLSA applied to Defendants' employees.

12. On November 12, 2015, I met with Ms. San Miguel, Mr. Sanque, Mr. San Miguel, and Ms. Burton. Mr. Eastwood and Tara Stearns of the Solicitor of Labor were also present. During the meeting, I went over my investigative findings. Specifically, I explained that I had determined that Defendants failed to pay caregivers the minimum wage and overtime wages required by the FLSA, and failed to comply with the recordkeeping provisions of the Act. With regard to recordkeeping, I explained that I had determined that for many pay periods Defendants failed to keep any records of the daily hours worked by employees in the facilities, and for others, the timesheets they kept were inaccurate.

13. After the meeting, Defendants continued to dispute coverage. As a result, on December 4, 2015, the Secretary filed a Complaint alleging that Defendants violated the minimum wage, overtime, and recordkeeping provisions of the FLSA.

14. On January 20, 2016, a confidential informant contacted the Wage and Hour Division to report that Ms. San Miguel was falsifying timesheets. Later that day, I spoke to the informant. The informant said that in November or December 2015, Ms. San Miguel began pressuring current and former employees to sign false, backdated timesheets. In addition, my informant said that Ms. San Miguel also pressured current and former employees to sign newly created employment agreements stating that they were not entitled to overtime. The informant said that Ms. San Miguel offered some employees money in exchange for signing the documents. In addition, the informant told me that Ms. San Miguel was angry at the workers who were interviewed by the Department of Labor and was trying to pinpoint who complained. The

PHAM DECLARATION IN SUPPORT OF MOTION FOR TRO & AND ORDER TO SHOW CAUSE
*Secretary v. San Miguel Homes for the Elderly, LLC* (Case No. 4:15-cv-5556-DMR)

4

informant said that employees had quit due to Ms. San Miguel's behavior, and that they were afraid of speaking with the Department of Labor and of getting in trouble for signing the false documents.

15. On January 21, 2016, my informant emailed me a copy of some of the fake timesheets, which were backdated for pay periods in 2013, and the newly created employment agreement.

16. On January 22 and 27, 2016, I talked to another confidential informant who said that since December 2015, Ms. San Miguel also required employees (including some interviewed during the investigation) to sign waivers of their right to sue their employer. On January 25, 2015, my informant forwarded me a copy of the waiver agreement. The agreement states:

> TALK AND AGREE CONTRACT BEFORE OPENING LEGAL ACTION
>
> For a compensation of _____$[redacted]_____ I waved[sic] the right to open a legal case or sue San Miguel Homes LLC.
>
> I will talk to the management first about my concerns and try to Settle the problem.
>
> San Miguel Homes LLC talked to me about asking an Attorney if I have legal doubts.
>
> _____  _____
> Caregiver signature-date                        [signature of Precilla San Miguel]

Because I was unable to confirm whether all employees were given the same amount of money to sign the waiver agreement, this excerpt does not include the amount of compensation stated in the agreement so as not to reveal my informant's identity.

17. On January 27, 28, and 29, 2016, I talked to two other confidential informants. These informants said that over the last two months, Ms. San Miguel has repeatedly expressed anger toward workers whom she accused of providing information to the Department of Labor, and questioned them about the information they provided. In addition, my informants stated that Ms. San Miguel has picked on the employees she accused of complaining to the Department of Labor, tried to find mistakes in their work, and treated them worse than other workers. Further,

one informant said that in late January 2016, Ms. San Miguel told employees who are listed in the Secretary's Complaint that she was going to sue all the employees allegedly entitled to back wages after she won the lawsuit brought by the Department of Labor. According to my informants, at least one employee resigned due to Ms. San Miguel's intimidating behavior and pressure to sign false documents.

18. Some of the employees who participated in the investigation are still employed in Defendants' facilities, where they work in close quarters with Ms. San Miguel and her sons.

19. Over the past two weeks, the informants who provided this information have told me that they are afraid of facing further retaliation from Ms. San Miguel if they openly speak out about her behavior, or talk to the Department of Labor's representatives.  In addition, the informants said that employees are afraid of providing testimony or participating openly in this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ____2/8/16____, in San Jose, California.

_____
MARY PHAM

PHAM DECLARATION IN SUPPORT OF MOTION FOR TRO & AND ORDER TO SHOW CAUSE
*Secretary v. San Miguel Homes for the Elderly, LLC* (Case No. 4:15-cv-5556-DMR)